**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAT AGIYAR, LLC, <br><br> Plaintiff, <br><br> v. <br><br> 7-ELEVEN, INC., <br><br> Defendant. | Civil Action No. 19-19994 (MAS) (ZNQ) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant 7-Eleven, Inc.'s ("Defendant") Motion to Dismiss. (ECF No. 4.) Plaintiff SAT Agiyar, LLC ("Plaintiff") opposed (ECF No. 17), and Defendant replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion to Dismiss.

**I.   BACKGROUND[1]**

Plaintiff owns and operates a 7-Eleven franchise (the "Store") in Princeton, New Jersey. (Compl. ¶ 3, ECF No. 1-1.) Prior to Plaintiff operating the Store, Princeton adopted a local ordinance (the "Ordinance") that prohibited retail food establishments, such as the Store, from

---

[1] "Generally, a court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency. However, the court may consider documents which are attached to or submitted with the complaint . . . ." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F. 3d 284, 290 (3d Cir. 2014) (citation omitted). The Court, accordingly, considers the documents Plaintiff attached to its Complaint.

operating between 2 AM and 5 AM. (Princeton, N.J., Ordinance 2014-45 § 1(c) (Dec. 15, 2014), ECF No. 1-3.) The Ordinance contained a sunset provision: prohibition on operating between 2 AM and 5 AM would "automatically terminate and become null and void" three years after the Ordinance's adoption, unless readopted. (*Id.* § 3.)

On September 14, 2015, Plaintiff entered into a franchise agreement (the "Franchise Agreement") with Defendant. (Compl. ¶ 4; *see generally* Franchise Agreement, ECF No. 1-2.) Under the Franchise Agreement, Plaintiff agreed to "comply with all local, state[,] and federal laws, statutes, regulations, ordinances, and rules . . . with respect to the operation, use, repair[,] and possession of the Store." (Franchise Agreement § 8(a)(1).) Plaintiff also agreed to "maintain the Store as a [twenty-four-hour operation], unless prohibited by law or [Defendant agreed] in writing to different operating hours." (*Id.* § 19(d).) If the Ordinance prohibited the Store from operating twenty-four hours per day, the parties agreed that "the Store must operate the maximum number of hours permitted by law." (Franchise Agreement Ex. D ¶ (a), ECF No. 1-2 at *52.)[2]

Under the Franchise Agreement, Plaintiff also agreed to pay a percentage of the Store's gross profit to Defendant (the "7-Eleven Charge."). (Franchise Agreement § 10(a); Franchise Agreement Ex. E 8, ECF No. 1-2 at *63.) The 7-Eleven charge is determined according to a fixed schedule but starts at a base of 48% of the Store's gross profit. (*See* Schedule D, Franchise Agreement Ex. D 4, ECF No. 1-2 at *55; *see also* Compl. ¶ 5.) If Defendant granted permission for the Store to operate fewer than twenty-four hours per day, an additional 0.1% of gross profit is added to the 7-Eleven Charge for each hour the Store is closed per week. (Franchise Agreement Ex. D ¶ (i)(2).)

---

[2] Page numbers preceded by an asterisk refer to the page number on the ECF header.

2

In light of the Ordinance, on the same day the parties executed the Franchise Agreement, they also executed an amendment to the Franchise Agreement (the "Amendment"). (*See generally* Amendment, ECF No. 1-4.) The Amendment acknowledged that, because of the Ordinance, the Store was prohibited from operating as a twenty-four-hour establishment. (*Id.* ¶ B.) The Amendment also acknowledged that, pursuant to the Franchise Agreement, the 7-Eleven Charge for operating the Store would increase if the Store could not operate as a twenty-four-hour establishment for any reason. (*Id.*) The parties executed the Amendment to "temporarily allow the 7-Eleven Charge for the Store to remain unchanged" even though the Ordinance prohibited the Store from operating as a twenty-four-hour establishment. (*Id.* ¶ C.)

In the Amendment, the parties agreed the 7-Eleven Charge would not increase based on the Store's reduced hours of operation until either the Store was permitted to operate as a twenty-four-hour establishment or two years elapsed from the execution date of the Franchise Agreement, whichever occurred sooner. (*Id.* ¶ 1.) If the Store was not permitted to operate as a twenty-four hour establishment after two years—such as if the Ordinance were readopted—the parties agreed that Plaintiff would "continue operating the Store under the terms of the Franchise Agreement, subject to the adjustment to the 7-Eleven Charge for a permitted reduction in hours of operation." (*Id.* ¶ 2.)

Plaintiff pleads that Defendant represented that Plaintiff "would not be penalized through a reduction or change in the [7-Eleven Charge] due to the fact that the [Store] could not be open for a [twenty-four-hour] period." (Compl. ¶ 12.) Defendant also "represented to Plaintiff that the [O]rdinance was not likely to be renewed, but if it was, the [Amendment] would continue until the [Ordinance] was no longer in effect. (*Id.* ¶ 14.) Plaintiff relied upon these representations in executing the Franchise Agreement and the Amendment. (*Id.* ¶¶ 13, 15.)

3

After the parties executed the Franchise Agreement and Amendment, but prior to the Ordinance's sunset date, Princeton readopted the Ordinance and repealed its sunset provision. (Compl. ¶ 16.) Plaintiff pleads that, despite the readopted Ordinance prohibiting twenty-four-hour operation, Defendant "demanded that [Plaintiff] operate the [Store] on a [twenty-four-hour] basis," and that Defendant "refused to amend the Franchise Agreement" to excuse the increase in the 7-Eleven Charge resulting from Plaintiff operating fewer than twenty-four hours per day. (*Id.* ¶¶ 21–22.)

Starting in 2017, and continuing through 2019, Defendant "unilaterally altered the [7-Eleven Charge] between Plaintiff and [Defendant] for the [Store] due to the sole fact that the [Store] could not operate on a [twenty-four-hour] basis." (*Id.* ¶ 23.) As a result of Defendant's change in the [7-Eleven Charge], Plaintiff failed to maintain certain capital requirements under the Franchise Agreement. (*Id.* ¶ 25.) Defendant "issued several default notices to Plaintiff alleging that [Plaintiff] failed to maintain the required capital . . . in the Store." (*Id.* ¶ 24.)

Plaintiff asserts several causes of action or avenues of relief: (1) breach of contract, (*id.* ¶¶ 28–36); (2) declaratory judgment, (*id.* ¶¶ 37–45); (3) injunctive relief, (*id.* ¶¶ 46–51); (4) fraudulent misrepresentation, (*id.* ¶¶ 52–62); (5) negligent misrepresentation, (*id.* ¶¶ 63–68); (6) unjust enrichment, (*id.* ¶¶ 69–73); and (7) conversion, (*id.* ¶¶ 74–79). Defendant moves to dismiss all counts for failure to state a claim. (*See generally* Def.'s Moving Br., ECF No. 4-1.)

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for

4

failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

For claims of fraud, however, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A "plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citation and quotation marks omitted). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (internal citation and quotation marks omitted). Regardless of whether Rule 8(a)(2) or 9(b) applies, on a motion to dismiss under Rule 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678

5

(citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION[3]

### A. Breach of Contract

Plaintiff pleads that Defendant breached the Franchise Agreement by "unilaterally altering the profit distribution between the parties . . . as a result of Plaintiff's inability to be open on a [twenty-four-hour] basis, (Compl. ¶ 30), and by failing to follow provisions in the Franchise Agreement requiring Plaintiff to abide by local ordinances and operate the Store twenty-four hours per day, (Compl. ¶ 35).

To state a prima facie case for breach of contract, a plaintiff must allege: (1) "that the parties entered into a contract containing certain terms"; (2) "that [the plaintiff] did what the contract required [it] to do"; (3) "that [the defendant] did not do what the contract required [it] to do, defined as a breach of the contract"; and (4) "that [the defendant's] breach, or failure to do what the contract required, caused a loss to the plaintiff." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotation marks and citation omitted). Failure to identify a specific provision of a contract that was breached is grounds for dismissal. *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 459–60 (D.N.J. 2009).

Here, Plaintiff fails to state a claim for breach of contract because Plaintiff fails to identify any contractual obligation that Defendant failed to perform. First, Plaintiff alleges that Defendant

---

[3] Because the Franchise Agreement specifies that the agreement is governed by the law of the state in which the Store is located, the Court applies New Jersey law. (Franchise Agreement § 30(a).)

6

breached the contract by unilaterally altering the 7-Eleven Charge because the Store operated fewer than twenty-four hours per day. But Plaintiff fails to identify any specific provision of the Franchise Agreement or Amendment that Defendant's alleged conduct breaches. Furthermore, an increase in the 7-Eleven Charge as a result of the Store operating fewer than twenty-four hours per day, beginning two years after the execution of the Franchise Agreement, appears permitted by the plain language of the Franchise Agreement and the Amendment. (*See* Franchise Agreement Ex. D ¶ (i)(2); Amendment ¶ 2.) Plaintiff, accordingly, fails to state a claim for breach of contract on the basis of Defendant altering the 7-Eleven Charge.

Second, Plaintiff alleges Defendant breached the contract by failing to follow Sections 8(a)(1) and 19(d) of the Franchise Agreement.[4] (Compl. ¶ 35.) These provisions, however, impose no obligation on Defendant. Section 8(a)(1) states that "[Plaintiff agrees] to comply with all local . . . ordinances." (Franchise Agreement § 8(a)(1).) Section 19(d) requires Plaintiff to "maintain the Store as a 24-Hour Operation, unless prohibited by law or [Defendant agrees] in writing to different operating hours." (*Id.* § 19(d).) Because Plaintiff fails to plead any obligation for Defendant within these provisions, Plaintiff fails to state a claim for breach of contract based on these provisions. The Court dismisses Plaintiff's breach of contract claim.[5]

---

[4] Plaintiff's Complaint specifically refers to Sections 8(1) and 19(a) of the Franchise Agreement. (Compl. ¶ 18–19, 35.) As Defendant notes, however, there is no Section 8(1) of the Franchise Agreement, and Section 19(a) does not state that the Store must be open twenty-four hours per day unless prohibited by law, as pleaded by Plaintiff. (*See* Def.'s Moving Br. 6–8; *see generally* Franchise Agreement §§ 8(a)(1), 19(a).) The Court interprets Plaintiff's Complaint as referring to Sections 8(a)(1) and 19(d).

[5] In its Opposition Brief, Plaintiff argues that its allegation that Defendant insisted the Store operate on a twenty-four-hour basis—despite the provisions of the Franchise Agreement that require Plaintiff to comply with local ordinances—is sufficient to state a claim for breach of contract. (Pl.'s Opp'n Br. 8–9, ECF No. 17; *see* Compl. ¶ 21.) Even if such an allegation were sufficient to state a breach of contract claim, the Court finds Plaintiff's allegation factually unsupported and chooses to ignore it. *See Iqbal*, 556 U.S. at 678.

7

### B. Declaratory Judgment and Injunctive Relief

Plaintiff pleads separate counts in its Complaint for declaratory judgment and injunctive relief. (Compl. ¶¶ 37–51.) Defendant argues that these are remedies, not independent legal claims, and must be dismissed. (Def.'s Moving Br. 11.) "[C]ourts in this circuit routinely dismiss stand alone counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action." *ASAH v. N.J. Dep't of Educ.*, No. 16-3935, 2017 WL 2829648, at *12 (D.N.J. June 20, 2017) (citing cases). The Court, accordingly, dismisses Plaintiff's separate counts for declaratory judgment and injunctive relief.

### C. Fraudulent Misrepresentation and Negligent Misrepresentation

For its fraudulent misrepresentation claim, Plaintiff pleads that Defendant "made misrepresentations, non-disclosures[,] and purposeful concealments with regard to the operation of the [Store] when the Franchise Agreement was executed with the knowledge and expectation that Plaintiff[] would rely on them." (Compl. ¶ 53.) Specifically, Plaintiff alleges that Defendant "failed to disclose to Plaintiff[] that . . . if the local ordinance was renewed . . . [Defendant] would not extend the [Amendment] with regard to the [twenty-four] hour operation of the [Store]." (*Id.* ¶ 54.)

For its negligent misrepresentation claim, Plaintiff pleads substantively the same allegations as its fraudulent misrepresentation claim, including alleging that "[Defendant] fraudulently induced Plaintiff to enter into the Franchise Agreement," and that "[Defendant] made those misrepresentations and [omissions] with the knowledge [or] expectation that Plaintiff would rely upon them." (Compl. ¶¶ 64–65.) The notable difference from Plaintiff's fraudulent misrepresentation claim is that Plaintiff adds, "[t]o the extent that those misrepresentations and omissions were not made intentionally, they were made negligently." (Compl. ¶ 68.)

8

Defendant argues that Plaintiff fails to plead its fraudulent misrepresentation or negligent misrepresentation claims with particularity, that Plaintiff fails to plead it reasonably relied on the alleged misrepresentations, that Plaintiff fails to plead an adequate misrepresentation, and that Defendant had no duty to disclose its future intentions regarding renewing the Amendment. (Def.'s Moving Br. 13–18.)

"To state a claim for fraudulent misrepresentation . . . a plaintiff must show '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance . . . by the other person; and (5) resulting damages.'" *Sahoury v. Meredith Corp.*, No. 11-5180, 2012 WL 3185964, at *4 (D.N.J. Aug. 2, 2012) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73, 876 A.2d 253 (N.J. 2005)). To state a claim for negligent misrepresentation, a plaintiff must plead an "incorrect statement, negligently made and justifiably relied upon, [and] . . . economic loss or injury sustained as a result of that reliance." *Green v. Morgan Props.*, 73 A.3d 478, 493–94 (N.J. 2013) (alterations in original).

A "plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 200 (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 9(b). Claims that sound in fraud, even where fraud is not a necessary element of a claim, must also be pleaded with particularity. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996)). A negligent misrepresentation claim sounds in fraud, and must be pleaded with particularity, if it "references allegations of fraud and relies upon an allegedly false representation." *Cty. of Essex v. Aetna Inc.*, No. 17-13663, 2018 WL 6584920, at *7 (D.N.J. Dec. 13, 2018) (citation omitted) (applying Rule 9(b) pleading standard to negligent misrepresentation claim). To satisfy the Rule 9(b) standard, a

plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (internal quotation marks and citation omitted).

Because Plaintiff's negligent misrepresentation claim references the allegations of fraud and relies upon the allegedly false misrepresentations in its count asserting a claim for fraudulent misrepresentation, the Court finds the negligent misrepresentation claim sounds in fraud. Both the fraudulent misrepresentation claim and the negligent misrepresentation claim, therefore, must be pleaded with particularity.

Here, for both the fraudulent misrepresentation and negligent misrepresentation claims, Plaintiff fails to plead fraud with sufficient particularity to satisfy Rule 9(b). Aside from alleging that Defendant made misrepresentations at some time prior to the signing of the Franchise Agreement and Amendment, Plaintiff fails to plead any specificity regarding the date, time, or place of the alleged misrepresentations. *See Trusted Transp. Sols., LLC v. Guarantee Ins. Co.*, No. 16-7094, 2018 WL 2926167, at *6 (D.N.J. June 11, 2018) (finding the plaintiff failed to plead with particularity where the plaintiff "d[id] not specify the date of the alleged fraud"). Furthermore, Plaintiff fails to specify the agent of Defendant who made the misrepresentations. *See Cty. of Essex*, 2018 WL 6584920, at *7 (finding the plaintiff failed to plead with particularity where complaint did not "identify the speaker of [the] allegedly fraudulent statements" and merely attributed the statements to the defendant company). Plaintiff's pleadings lack sufficient precision to put Defendant on notice of its precise misconduct. The Court, accordingly, dismisses Plaintiff's fraudulent misrepresentation and negligent misrepresentation claims.

### D.     Unjust Enrichment

Plaintiff pleads that "[Defendant's] retention of the benefit of . . . the profits and proceeds from [Plaintiff's] operation of the [Store] in violation of the Franchise Agreement is unfair and

unjust." (Compl. ¶ 73.) Although Plaintiff does not explicitly state which "profits and proceeds" Defendant retained, (Compl. ¶ 70), Plaintiff's incorporation of other allegations in the Complaint indicates Plaintiff refers to Defendant increasing the 7-Eleven Charge.[6] Defendant argues that Plaintiff's unjust enrichment claim must be dismissed because an unjust enrichment claim cannot exist when there is an enforceable agreement between the parties. (Def.'s Moving Br. 19 (citing *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 729, 733 (D.N.J. 2008)).) Plaintiff argues its unjust enrichment claim is pleaded "in the alternative to the existence of the [Franchise Agreement and Amendment]." (Pl.'s Opp'n Br. 7.)

To state a claim for unjust enrichment, "a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "A claim of unjust enrichment will not stand when an express contract exists concerning the identical subject matter." *Spano v. JP Morgan Chase Bank, NA*, 521 F. App'x 66, 70 (3d Cir. 2013) (citation omitted). "Pleading in the alternative under [Federal Rule of Civil Procedure] 8(d)(2) is, of course, permissible, but pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (internal citations omitted).

Here, Plaintiff's unjust enrichment claim must be dismissed because Plaintiff's claim relies upon the existence and validity of the Franchise Agreement and Amendment. Plaintiff pleads that Defendant unjustly retained profits of the Store by increasing the 7-Eleven Charge "in violation of the Franchise Agreement [and Amendment]." (Compl. ¶ 73.) Defendant does not dispute the

---

[6] To the extent Plaintiff pleads that Defendant unjustly retained other profits or proceeds, the Court finds that Plaintiff insufficiently pleaded those factual allegations.

11

validity of the Franchise Agreement and Amendment and argues those agreements govern the same subject matter as Plaintiff's unjust enrichment claim. Because the Franchise Agreement and Amendment govern the subject of Plaintiff's unjust enrichment claim and the parties do not dispute the validity of those agreements, the Court dismisses Plaintiff's unjust enrichment claim.

### E. Conversion

Plaintiff pleads that Defendant "took [Plaintiff's] funds from the operation of the [Store] that were rightfully Plaintiff's pursuant to the Franchise Agreement," that Defendant's "taking of the funds is illegal and in violation of the terms and provisions of the Franchise Agreement, and that Defendant "remains in possession of [Plaintiff's] funds." (Compl. ¶¶ 76–77.) Defendant argues, "In light of the express terms of the Franchise Agreement and [Amendment] that set forth the 7-Eleven Charge that Plaintiff agreed to pay to [Defendant] if [Plaintiff] did not operate [twenty-four hours per day], Plaintiff cannot establish that [Defendant's] control over the amounts Plaintiff paid to [Defendant] was 'wrongful' or 'inconsistent with the owner's rights.'" (Def.'s Moving Br. 20 (quoting *Scholes Elec. & Commc'ns, Inc. v. Fraser*, 2006 WL 1644920, at *4 (D.N.J. June 14, 2006)).)

Defendant's argument in favor of dismissal of this claim totals four sentences. (*Id.* at 20–21.) Defendant cites only one case in support of its position, which simply states the definition of a conversion. (*See id.* at 20 (quoting *Scholes*, 2006 WL 1644920, at *4).) Defendant cites no relevant authority concerning dismissal of a conversion claim. Defendant, accordingly, fails to meet its "burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750. The Court denies Defendant's motion to dismiss Plaintiff's conversion claim without prejudice.

### IV. CONCLUSION

In sum, the Court dismisses Plaintiff's claims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. To the extent Plaintiff

12

asserts declaratory judgment and injunctive relief as independent causes of action, the Court dismisses those counts as well. The Court does not dismiss Plaintiff's conversion claim; but should Plaintiff file an amended complaint, the Court provides Defendant another opportunity to move to dismiss the conversion claim. An order consistent with this Memorandum Opinion will be entered.

                                                                              s/ Michael A. Shipp  
                                                                              **MICHAEL A. SHIPP**  
                                                                              **UNITED STATES DISTRICT JUDGE**