**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAT AGIYAR, LLC, | |
| Plaintiff, | Civil Action No. 19-19994 (MAS) (ZNQ) |
| v. | **MEMORANDUM OPINION** |
| 7-ELEVEN, INC., | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff SAT Agiyar, LLC's ("Plaintiff") Motion for Emergency Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion"). (ECF No. 33.) Defendant 7-Eleven, Inc. ("Defendant") opposed (ECF No. 35), Plaintiff replied (ECF No. 36), and Defendant filed a proposed sur-reply (ECF No. 37). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Plaintiff's Motion without prejudice.

**I. BACKGROUND**

Plaintiff owns and operates a 7-Eleven franchise (the "Store") in Princeton, New Jersey. (Am. Compl. ¶ 3, ECF No. 21.) Prior to Plaintiff operating the Store, Princeton adopted a local ordinance (the "Ordinance") that prohibited retail food establishments, such as the Store, from operating between 2 AM and 5 AM. (Princeton, N.J., Ordinance 2014-45 § 1(c) (Dec. 15, 2014), ECF No. 21-2.) The Ordinance contained a sunset provision providing that the prohibition on

operating between 2 AM and 5 AM "shall automatically terminate and become null and void" three years after the Ordinance's adoption, unless readopted. (*Id.* § 3.)

On September 14, 2015, Plaintiff entered into a franchise agreement (the "Franchise Agreement") with Defendant. (Am. Compl. ¶ 6; *see generally* Franchise Agreement, ECF No. 21-1.) Under the Franchise Agreement, Plaintiff agreed to "comply with all local, state[,] and federal laws, statutes, regulations, ordinances, and rules . . . with respect to the operation, use, repair[,] and possession of the Store." (Franchise Agreement § 8(a)(1).) Plaintiff also agreed to "maintain the Store as a [twenty-four-hour operation], unless prohibited by law or [Defendant agreed] in writing to different operating hours." (*Id.* § 19(d).) If the Ordinance prohibited the Store from operating twenty-four hours per day, the parties agreed that "the Store must operate the maximum number of hours permitted by law." (Franchise Agreement Ex. D ¶ (a), ECF No. 21-1 at *52.)[1]

Pursuant to the Franchise Agreement, Plaintiff agreed to pay a percentage of the Store's gross profit to Defendant (the "7-Eleven Charge"). (Franchise Agreement § 10(a); Franchise Agreement Ex. E 8, ECF No. 21-1 at *63.) The 7-Eleven Charge is determined according to a fixed schedule and starts at a base of 48% of the Store's gross profit. (*See* Schedule D, Franchise Agreement Ex. D 4, ECF No. 21-1 at *55.) If Defendant granted permission for the Store to operate fewer than twenty-four hours per day, an additional 0.1% of gross profit is added to the 7-Eleven Charge for each hour the Store is closed per week. (Franchise Agreement Ex. D ¶ (i)(2), ECF No. 21-1 at *53.)

In light of the Ordinance, the parties executed an amendment to the Franchise Agreement (the "Amendment") on the same day the parties executed the Franchise Agreement. (*See generally*

---

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

2

Amendment, ECF No. 21-3.) The Amendment acknowledged that the Store was prohibited from operating as a twenty-four-hour establishment and indicated "we are pursuing permits to allow for a [twenty-four-hour] Operation." (*Id.* ¶ B.) The Amendment also acknowledged that, pursuant to the Franchise Agreement, the 7-Eleven Charge for operating the Store would increase "if the Store cannot operate as a [twenty-four-hour] operation for any reason[.]" (*Id.*) The parties executed the Amendment to "temporarily allow the 7-Eleven Charge for the Store to remain unchanged" even though the Ordinance prohibited the Store from operating as a twenty-four-hour establishment. (*Id.* ¶ C.)

In the Amendment, the parties agreed the 7-Eleven Charge would not increase based on the Store's reduced hours of operation until either the Store was permitted to operate as a twenty-four-hour establishment or two years elapsed from the execution date of the Franchise Agreement, whichever occurred sooner. (*Id.* ¶ 1.) If the Store was not permitted to operate as a twenty-four-hour establishment after two years, the parties agreed that Plaintiff would "continue operating the Store under the terms of the Franchise Agreement, subject to the adjustment to the 7-Eleven Charge for a permitted reduction in hours of operation." (*Id.* ¶ 2.)

Plaintiff pleads that Defendant represented that Plaintiff "would not be penalized through a reduction or change in the [7-Eleven Charge] due to the fact that the [Store] could not be open for a [twenty-four-hour] period." (Am. Compl. ¶ 14.) Plaintiff also pleads that Defendant's Assistant Secretary/Franchise Sale Representative, Linford Bauder, "further represented to Plaintiff that the [O]rdinance was not likely to be renewed, but if it was, the [A]mendment would be renewed so as to not penalize Plaintiff for its inability to operate on a [twenty-four]-hour basis pursuant to the Ordinance." (*Id.* ¶ 15.) Plaintiff relied upon these representations in executing the Franchise Agreement. (*Id.* ¶ 16.)

After the parties executed the Franchise Agreement and Amendment, but prior to the Ordinance's sunset date, Princeton readopted the Ordinance and repealed its sunset provision. (*Id.* ¶ 17.) Plaintiff pleads that, despite the readopted Ordinance prohibiting twenty-four-hour operation, Defendant "demanded that [Plaintiff] operate the [Store] on a [twenty-four-hour] basis," and that Defendant "refused to extend [the] Amendment to the Franchise Agreement, as was done when the Franchise Agreement was originally executed and as was represented to Plaintiff by Mr. Bauder, 7-Eleven's Assistant Secretary/Franchise Sale Representative." (*Id.* ¶¶ 24–25.)

Plaintiff pleads that starting in 2017, and continuing through the filing date of the Amended Complaint, Defendant "unilaterally altered the 7-Eleven Charge to increase 7-Eleven's profit share for the [Store] due to the sole fact that the [Store] could not operate on a [twenty-four-hour] basis." (*Id.* ¶ 26.) Plaintiff further pleads that "[t]he failure of the Plaintiff to maintain the applicable capital/equity in the [Store] is a direct result of 7-Eleven's unilateral change in the profit-distribution." (*Id.* ¶ 28.)

Plaintiff's original Complaint asserted several causes of action or avenues of relief: (1) breach of contract, (Compl. ¶¶ 28–36, ECF No. 1-1); (2) declaratory judgment, (*id.* ¶¶ 37–45); (3) injunctive relief, (*id.* ¶¶ 46–51); (4) fraudulent misrepresentation, (*id.* ¶¶ 52–62); (5) negligent misrepresentation, (*id.* ¶¶ 63–68); (6) unjust enrichment, (*id.* ¶¶ 69–73); and (7) conversion, (*id.* ¶¶ 74–79). Defendant moved to dismiss all counts for failure to state a claim. (*See generally* Def.'s Moving Br., ECF No. 4-1.)

On June 30, 2020, the Court granted in part and denied in part Defendant's Motion to Dismiss. (June 30 Order, ECF No. 19; June 30 Memo. Op., ECF No. 20.) The Court found that the Complaint failed to state breach of contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment claims. (June 30 Mem. Op. 6–12.) The Court also dismissed Plaintiff's separate counts for declaratory and injunctive relief because they were

4

requests for remedies as opposed to independent causes of action. (*Id.* at 8.) Finally, the Court denied Defendant's Motion as to Plaintiff's conversion claim based upon Defendant's failure to meet its burden. (*Id.* at 12.) The Court granted Plaintiff leave to file an amended complaint. (June 30 Order.)

Plaintiff filed an Amended Complaint on July 28, 2020. (Am. Compl., ECF No. 21.) Plaintiff's Amended Complaint asserts several causes of action: (1) breach of contract, (*id.* ¶¶ 31–45); (2) fraudulent misrepresentation, (*id.* ¶¶ 46–61); (3) negligent misrepresentation, (*id.* ¶¶ 62–68); (4) violation of the New Jersey Franchise Practices Act ("NJFPA"), (*id.* ¶¶ 69–90); (5) violation of the covenant of good faith and fair dealing, (*id.* ¶¶ 91–98); (6) interference with prospective economic advantage (*id.* ¶¶ 99–102); and (7) conversion (*id.* ¶¶ 103–08). Defendant filed a Motion to Dismiss the Amended Complaint on August 11, 2020.[2] (ECF No. 23.)

## II. LEGAL STANDARD

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). This remedy should be granted only if plaintiffs establish that: (1) "they are likely to succeed on the merits of their claims"; (2) "they are likely to suffer irreparable harm without relief"; (3) "the balance of harms favors them"; and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mars Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). With respect to the first factor, "on an application for injunctive relief, the movant need only make a showing of reasonable probability, not the certainty, of success on the merits." *Atl. City Coin &*

---

[2] The Court will consider Defendant's Motion to Dismiss the Amended Complaint in a subsequent decision.

5

*Slot Serv. Co., Inc. v. IGT*, 14 F. Supp. 2d 644, 657 (D.N.J. 1998) (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Arguments Raised by Plaintiff in its Moving Brief

With respect to the first factor—likelihood of success on the merits—Plaintiff argues that Defendant violated the covenant of good faith and fair dealing and the NJFPA.[3] (Pl.'s Moving Br. 11–17, ECF No. 33-1.) The Court will examine each, in turn.

##### 1. The Covenant of Good Faith and Fair Dealing

A breach of the covenant of good faith and fair dealing occurs if a party to a contract "acts in bad faith or engages in some other form of inequitable conduct." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). A party does not breach the covenant simply by making decisions that disadvantage the other party. *Fabbro v. DRX Urgent Care LLC*, 616 F. App'x 485, 488 (3d Cir. 2015) (citing *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006)). In addition, "[i]f courts construe the covenant too broadly, it 'could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'" *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 399 (N.J. 2005) (quoting *Northview Motors, Inc. v. Chrysler Motor Corp.*, 227 F.3d 78, 92 (3d Cir. 2000)). Moreover, "[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action." *TBI Unlimited, LLC v.*

---

[3] Plaintiff alleges that "Defendant's actions against Plaintiff have, *amongst other things*, violate[d] the covenant of good faith and fair dealing as well as the NJFPA." (*Id.* at 10 (emphasis added).) Plaintiff, however, only argues Defendant's alleged violation of the covenant of good faith and fair dealing and the NJFPA in detail in its brief. The Court, consequently, considered these two grounds in reaching its decision.

*Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261–62 (N.J. 2002)).

Plaintiff argues that 7-Eleven has required it to operate the Store for a period of twenty-four hours even though a law prohibits twenty-four-hour operation. (Pl.'s Moving Br. 11–12, 15.) According to Plaintiff,

> the franchisor is imposing upon the Plaintiff the requirement that it operate the Store for a period of [twenty-four] hours, despite a law that prohibits same and the very Franchise Agreement prohibition on violating the law. Defendant's continued unwillingness to provide the appropriate amendment to the Franchise Agreement to ameliorate this Hobson's choice is, most certainly, a breach of the covenant of good faith and fair dealing.

(*Id.* at 11–12.)

7-Eleven, however, is not requiring Plaintiff to operate the Store for a period of twenty-four hours. Rather, 7-Eleven is enforcing the terms of the Amendment. In that regard, the increase in the 7-Eleven Charge as a result of the Store operating fewer than twenty-four hours per day, beginning two years after the execution of the Franchise Agreement, appears permitted by the plain language of the Franchise Agreement and the Amendment. In addition, the same alleged conduct that gave rise to Plaintiff's breach of contract claims underlies Plaintiff's claim for breach of the covenant of good faith and fair dealing. Based upon the arguments raised in its moving papers, Plaintiff has not demonstrated a likelihood of success on the merits on its claim for breach of the implied covenant of good faith and fair dealing.

2. The NJFPA

The purpose of the NJFPA is to preclude termination "without good cause." N.J. Stat. Ann. § 56:10–5; *Atl. City Coin & Slot Serv. Co.*, 14 F. Supp. 2d at 658. It applies only to a franchise

> (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services

7

> between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the [twelve] months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise.

*Atl. City Coin & Slot Serv. Co.*, 14 F. Supp. 2d at 658 (quoting N.J. Stat. Ann. § 56:10–4). The Act is intended to prevent "arbitrary or capricious actions by the franchisor who generally has vastly greater economic power than the franchisee." *Id.* (citation omitted). "For the purpose of [the NJFPA], good cause for terminating . . . a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." N.J. Stat. Ann. § 56:10–5. Additionally, "[i]t shall be a violation of [the NJFPA] for any franchisor . . . [t]o impose unreasonable standards of performance upon a franchisee." N.J. Stat. Ann. § 56:10–7(e).

Plaintiff argues that "[r]egardless of the amendment between the parties, . . . the failure to extend the waiver of the 24-hour requirement, in light of the Borough's law prohibiting same is the 'unfair' or 'unreasonable' practice. As a result, the Plaintiff clearly states a violation of the . . . NJFPA." (Pl.'s Moving Br. 12.) Plaintiff also argues:

> the franchisor was and continues to impose upon the Plaintiff the requirement that it operate the Store for a period of [twenty-four] hours, despite a law that prohibits same. It is this conduct by Defendant which Plaintiff alleges is unreasonable and in violation of the Act. Moreover, the Defendant has used this unreasonable standard to penalize Plaintiff financially; used this unreasonable demand as a basis for numerous allegations of default under the Franchise Agreement; and has further threatened to terminate the franchise as a result. Accordingly, the issue between the parties is not the simple creation of an economic hardship, but rather the imposition of a requirement for operation.

(*Id.* at 15.)

As discussed above, however, and as demonstrated by the language of the Agreement and Amendment, 7-Eleven is not requiring Plaintiff to operate the Store for a period of twenty-four hours. Rather, 7-Eleven is enforcing the terms of the Amendment. Here, Plaintiff has not

8

demonstrated a likelihood of success on the merits on its NJFPA claim because the 7-Eleven Charge is apparently permitted by the plain language of the Franchise Agreement and the Amendment.

Because Plaintiff has failed to demonstrate a likelihood of success on the merits on its claims for breach of the implied covenant of good faith and fair dealing and violation of the NJFPA, the Court need not reach the other prongs of the preliminary injunction analysis.[4]

## B. Arguments Raised by Plaintiff for the First Time in Its Reply Brief

Plaintiff raises pandemic-related arguments for the first time in its reply brief. Specifically, Plaintiff asserts that Defendant issued default notices for two years but only chose to pursue surrender of the store during the pandemic. (Pl.'s Reply Br. 3, ECF No. 36.) Plaintiff also argues:

> Defendant admits that the Net Worth deficiencies resulted from pandemic time operations. In fact, during this time, Plaintiff requested assistance from Defendant, as it, like most retail businesses across the country, greatly suffered. Assistance was offered to many franchisees, but not only did Defendant refuse assistance for Plaintiff, it has now used the financial difficulties caused by the pandemic (a 33% loss in revenue) as the basis for [its] present action to terminate the franchise—more evidence of Defendant's bad faith in dealing with this franchisee and breach of the NJFPA.

(*Id.* at 2.) According to Plaintiff, "[l]osses were a direct result of pandemic impacts such as Princeton University closing campus to its students, the state imposed stay at home restrictions, [and] other local businesses shutting down causing customer traffic to deteriorate, etc." (*Id.* at 2 n.3.)

---

[4] On January 14, 2021, the parties e-filed correspondence jointly requesting referral to the magistrate judge. (Jan. 14, 2021 Ltr., ECF No. 39.) The Court, therefore, has referred this matter to the Honorable Zahid N. Quraishi, U.S.M.J. Based on the joint request for referral to the magistrate judge, the Court notes that any potential harm no longer appears to be "immediate." *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (stating that a moving party "must make a clear showing of *immediate* irreparable harm").

9

In its Motion to File Sur-Reply,[5] Defendant argues that "[l]iability for breach of contract is strict, and Plaintiff's vague contentions that other franchisees have been treated more favorably than it are irrelevant to the propriety of franchise termination. Moreover, Plaintiff has, in fact, benefitted from 7-Eleven's COVID-19 programs for which it is eligible." (Def.'s Motion to File Sur-Reply 4–5, ECF No. 37.)

As noted, the NJFPA prohibits any franchisor from "impos[ing] unreasonable standards of performance upon a franchisee." N.J. Stat. Ann. § 56:10–7(e). Here, Defendant argued strict liability for breach of contract but did not address Plaintiff's COVID-related assertions with respect to Plaintiff's NJFPA claim. Notably, however, Defendant did not have the opportunity to do so in its original opposition because Plaintiff failed to raise these allegations in its moving papers.[6]

Plaintiff argued in its moving brief that its "negative net worth is a *direct result of 7-Eleven's unilateral change in the 7-Eleven [C]harge*, the very subject of this lawsuit" (Pl.'s Moving Br. 7 (emphasis added).) Plaintiff subsequently raised net-worth deficiencies based on COVID for the first time in its reply brief. (Pl.'s Reply Br. 2–3). "A moving party[, however,] may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2

---

[5] On January 13, 2021, Defendant filed a Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion (ECF No. 37) and attached its proposed sur-reply brief to its Motion (ECF No. 37-1).

[6] Indeed, in its moving brief, Plaintiff simply referenced COVID in the Preliminary Statement. (Pl.'s Moving Br. 2–3.) Plaintiff argued that "shutting down the business would undisputedly harm Plaintiff's employees, who will lose their jobs during the pandemic, and the Princeton community in which this essential business—a convenience stores [sic] selling groceries and other needs—serves, and which by adoption of the ordinance has made a public interest determination that the business cannot operate [twenty-four] hours a day." (*Id.*)

(D.N.J. Jan. 12. 2007) (quoting *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992)).

Here, both Defendant and the Court were prejudiced by Plaintiff's allegations raised for the first time in its reply brief. Moreover, Plaintiff's allegations were insufficiently supported.[7] Plaintiff, consequently, failed to demonstrate a likelihood of success on the merits on its new allegations that 7-Eleven imposed unreasonable standards of performance based on the losses it suffered due to COVID-19.

## IV.     CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Motion without prejudice. The Court will enter an order consistent with this Memorandum Opinion.

*M Ashipp*

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[7] For example, Plaintiff offered no specifics regarding the assistance it requested that Defendant allegedly refused. Plaintiff also offered no specifics regarding assistance that Defendant allegedly offered to franchisees other than Plaintiff that Defendant failed to offer Plaintiff.

11