**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAT AGIYAR, LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>7-ELEVEN, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 19-19994 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant 7-Eleven, Inc.'s ("7-Eleven") Motion to Dismiss Plaintiff SAT Agiyar, LLC's ("SAT Agiyar") Amended Complaint. (ECF No. 23.) SAT Agiyar opposed (ECF No. 27), and 7-Eleven replied (ECF No. 30). The Court has carefully considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in part and denies in part 7-Eleven's Motion.

**I.　BACKGROUND**

This case presents a contract dispute between a franchisor, 7-Eleven, and franchisee, SAT Agiyar. Six years ago, the parties entered into a franchise agreement (the "Franchise Agreement"), whereby SAT Agiyar would operate a 7-Eleven franchise in Princeton, New Jersey (the "Store").

**A.　The Contract Provisions**

The Court begins with the operative contract provisions:

*The 7-Eleven Charge Provision.* Under section 10(a) of the Franchise Agreement (the "7-Eleven Charge Provision"), SAT Agiyar agreed to pay a "7-Eleven Charge." (Franchise Agreement § 10(a), ECF No. 21-1.)[1] That charge was a fee for "the License, the Lease, and [7-Eleven's] continuing services." (*Id.*) Notably, under the 7-Eleven Charge Provision, 7-Eleven also agreed that it "may reconcile the 7-Eleven Charge account" periodically. (*Id.*)

*The 24-Hour Provisions.* In addition to the 7-Eleven Charge Provision, SAT Agiyar also agreed to two provisions that dictated the Store's hours of operation (the "24 Hour Provisions"). *First*, section 8(a)(1) of the Franchise Agreement provides that SAT Agiyar agrees to "comply with all local, state[,] and federal laws, statutes, regulations, ordinances, and rules . . . with respect to operation, use, repair[,] and possession of the Store." (*Id.* § 8(a)(1).) *Second*, section 19(d) provides that SAT Agiyar agrees to "maintain the Store as a 24-Hour Operation, unless prohibited by law or [7-Eleven agreed] in writing to different operating hours." (*Id.* § 19(d).) These provisions matter because at the time the parties entered into the Franchise Agreement, Princeton had enacted an ordinance (the "Ordinance") that barred businesses from operating between 2 AM and 5 AM. (Am. Compl. ¶ 11, ECF No. 21; Princeton Ordinance No. 2014-45 (Dec. 15, 2014), ECF No. 21-2.)[2] Thus, the Ordinance lawfully barred SAT Agiyar from operating the Store 24 hours a day.

*The Profit Distribution Provision.* Critical to this dispute is the interplay between the 7-Eleven Charge Provision, the 24-Hour Provisions, and section (i) of Exhibit D of the Franchise

---

[1] The Court considers documents (including the Franchise Agreement) attached to the Amended Complaint in its decision. *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

[2] SAT Agiyar mistakenly alleges that the Ordinance barred businesses from operating between midnight and 5 AM. (Am. Compl. ¶ 11.)

Agreement (the "Profit Distribution Provision"). Under the Profit Distribution Provision, stores operating at 24 hours paid 7-Eleven a 7-Eleven Charge of 48% of gross profits. (Franchise Agreement Ex. D (i)(1).) But stores operating at less than 24 hours paid 7-Eleven a 7-Eleven Charge at a higher percentage, ratcheting upward depending on how many hours the store remained closed on a weekly basis. (*Id.* at Ex. D (i)(2)-(3).) For example, stores that operated at 21 hours a day would pay at least 50.1% of gross profits. (*See id.* ("If you have our permission to operate the Store at less than a 24-Hour Operation, the 7-Eleven Charge for the Store will be [48%] plus 0.1% of the Gross Profit for each hour during a normal week of operation that the Store is closed.").)[3]

*The Amendment.* Recognizing the penalty SAT Agiyar faced by complying with the Ordinance, the parties executed an amendment on the same day they signed the Franchise Agreement (the "Amendment") in September 2015. (Am. Compl. ¶ 13; *see also* Amendment, ECF No. 21-3.) The Amendment modified the Profit Distribution Provision by waiving the upward profit-distribution adjustment for two years. (Amendment § C.) The Amendment further envisioned that 7-Eleven would attempt to persuade Princeton to waive compliance with the Ordinance for the Store:

> If we get authorization to operate the Store as a 24-Hour Operation through a final resolution of our request, you will continue operating the Store under the terms of the Franchise Agreement. If we fail to get authorization to operate the Store as a 24-Hour Operation through a final resolution of our request, you will continue operating the Store under the terms of the Franchise Agreement, subject to the adjustment to the 7-Eleven Charge . . . beginning two (2) years from the Effective Date of the Franchise Agreement . . . .

---

[3] The calculation is as follows: 48% base gross profits plus 2.1% (21 hours closed per week).

3

(*Id.* § C(2).) Notwithstanding the plain language of the Amendment, SAT Agiyar alleges that Linford Bauder, 7-Eleven's Assistant Secretary and Franchise Sales Representative, represented to SAT Agiyar that Princeton would likely not renew the Ordinance and that, if Princeton did, 7-Eleven would renew the Amendment to account for the Ordinance's renewal. (Am. Compl. ¶ 15.) Further, SAT Agiyar alleges that it relied on Bauder's representation when entering into the Franchise Agreement and Amendment. (*Id.* ¶ 16.)

### B. The Contract Dispute

Putting it all together, when the parties executed the Franchise Agreement and Amendment in September 2015, SAT Agiyar was slated to pay 48% of gross profits to 7-Eleven for two years. After that, so long as the Ordinance remained in place, SAT Agiyar would pay 50.1% of gross profits. But SAT Agiyar believed that 7-Eleven would renew the Amendment so that it would not fall prey to the 50.1% 7-Eleven Charge.

Not all went according to the parties' plan. In December 2016, despite Bauder's prediction, Princeton renewed its Ordinance indefinitely. (Am. Compl. ¶¶ 17-18.) That meant that SAT Agiyar was responsible for the upward profit-distribution adjustment beginning in September 2017—absent a renewal of the Amendment. SAT Agiyar alleges that, despite Bauder's representation, 7-Eleven refused to renew the Amendment. (*Id.* ¶ 25.) As a result, SAT Agiyar has operated the Store less profitably, has been unable to maintain certain capital and equity levels required by the Franchise Agreement, and has been issued default notices by 7-Eleven. (*Id.* ¶¶ 26-27.)

### C. Procedural Posture

SAT Agiyar sued 7-Eleven in November 2019. SAT Agiyar's original complaint alleged several theories, including breach of contract, injunctive relief, fraudulent and negligent misrepresentation, unjust enrichment, and conversion. (*See generally* Compl., ECF No. 1.) 7-Eleven moved to dismiss that complaint. (ECF No. 4.) In its June 30, 2020 Memorandum

4

Opinion, the Court granted in part and denied in part 7-Eleven's motion to dismiss. Specifically, the Court dismissed (1) the breach-of-contract claim for failing to allege a breach; (2) the misrepresentation claims for failing to plead with particularity; and (3) the injunctive relief and unjust enrichment claims for failing to allege independent causes of action. *SAT Agiyar, LLC v. 7-Eleven, Inc.*, No. 19-19994, 2020 WL 3546821, at *3-6 (D.N.J. June 30, 2020), ECF No. 20. The Court denied 7-Eleven's motion regarding SAT Agiyar's conversion claim. *See id.* at *6.

SAT Agiyar amended. In its Amended Complaint, SAT Agiyar alleged breach of contract, fraudulent and negligent misrepresentation, violations under the New Jersey Franchise Practices Act (the "Act"), breach of the implied covenant of good faith and fair dealing, tortious interference, and conversion. (*See generally* Am. Compl.) SAT Agiyar followed up its Amended Complaint with a motion for preliminary injunction. (ECF No. 33.) In its January 15, 2021 Memorandum Opinion, the Court denied that motion. *See SAT Agiyar, LLC v. 7-Eleven, Inc.*, No. 19-19994, 2021 WL 147110, at *3-6 (D.N.J. Jan. 15, 2021), ECF No. 41. Specifically, the Court found that SAT Agiyar did not demonstrate a likelihood of success on the merits for its breach-of-covenant claim and claim under the Act. *See id.* at *3-5.

Now before the Court is 7-Eleven's Motion to dismiss the Amended Complaint. (ECF No. 23.) SAT Agiyar opposed (ECF No. 27), and 7-Eleven replied (ECF No. 30).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

#### A. Count I: Breach of Contract

The Court begins its analysis with SAT Agiyar's first claim, breach of contract. SAT Agiyar alleges that 7-Eleven breached the 7-Eleven Charge Provision "by unilaterally altering the profit distribution between the parties for the Store Location, as a result of Plaintiff's inability to be open on a 24-hour basis." (Am. Compl. ¶ 33.) Let's break that down. The 7-Eleven Charge Provision provides that SAT Agiyar "agree[s] to pay [7-Eleven] the 7-Eleven Charge for the License, the Lease, and [7-Eleven's] continuing services." (Franchise Agreement § 10(a).) As defined by the Franchise Agreement, the "7-Eleven Charge" is "an amount equal to [a] percentage

6

of Gross Profit specified in [the Profit Distribution Provision]." (Franchise Agreement Ex. E.) According to the Profit Distribution Provision, a store operating at 24 hours would pay a base 7-Eleven Charge of 48% of gross profits; a store operating at 21 hours (like SAT Agiyar) would pay 50.1%. (*See* Franchise Agreement Ex. D § (i)(2).) So, SAT Agiyar alleges that 7-Eleven breached the contract by adjusting the base 7-Eleven Charge upward from 48% to 50.1%. (Am. Compl. ¶ 42 ("7-Eleven had breached Section 10(a) of the Franchise Agreement by not properly calculating the '7-Eleven Charge' and compensating for the fact that the Store Location cannot legally be open on a 24-hour basis.").)

Although compelling, SAT Agiyar's allegations fail as a matter of law. Breach-of-contract claims require that the "defendant failed to perform [its] obligations under the contract." *Robert Wood Johnson Univ. Hosp. at Hamilton, Inc. v. SMX Cap., Inc.*, No. 12-7049, 2013 WL 4510005, at *4 (D.N.J. Aug. 26, 2013) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)). SAT Agiyar has identified no obligation 7-Eleven failed to perform under the 7-Eleven Charge Provision. Notably, the plain language of that provision imposes obligations on SAT Agiyar only. (*See* Franchise Agreement § 10(a) ("[*SAT Agiyar*] agree[s] to pay [7-Eleven] the 7-Eleven Charge" and "[*SAT Agiyar*] may not withhold Receipts or prevent payment of the 7-Eleven Charge").) Thus, 7-Eleven cannot breach a contract provision under which it had no obligation to perform. *See Grande Vill. LLC v. CIBC Inc.*, No. 14-3495, 2015 WL 1004236, at *5 (D.N.J. Mar. 6, 2015) (dismissing breach-of-contract claim where the "plaintiffs can[not] identify what contractual provision was breached").

Nor does SAT Agiyar identify an obligation for 7-Eleven to "compensat[e] for the fact that the Store Location cannot legally be open on a 24-hour basis." (Am. Compl. ¶ 42.) SAT Agiyar alleges that "7-Eleven is unwilling to . . . implement a permanent waiver of the 24-hour

7

operations." (*Id.* ¶ 41.) But again, SAT Agiyar points to no obligation for 7-Eleven to do so.[5] Further, SAT Agiyar relies on the 24-Hour Provisions, which require SAT Agiyar to comply with local laws and remain open for 24 hours unless barred by law. (Franchise Agreement §§ 8(a)(1), 19(d).) But the Court already decided that those provisions impose no obligations on 7-Eleven in its June 30, 2020 Opinion. *See SAT Agiyar, LLC*, 2020 WL 3546821, at *4; *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002) ("The doctrine of the law of the case . . . limits relitigation of an issue once it has been decided."). The Court declines to revisit that issue now.

    **B.    Counts II and III: Fraudulent and Negligent Misrepresentation**

Next, SAT Agiyar alleges that "7-Eleven made misrepresentations, non-disclosures and purposeful concealments with regard to the operation of the Store Location when the Franchise Agreement was executed." (Am. Compl. ¶ 47.) Specifically, SAT Agiyar alleges as follows:

> 7-Eleven, through its Assistant Secretary/Franchise Sales Representative, Linford Bauder, further represented to [SAT Agiyar] prior to the execution of the Franchise Agreement in July of 2015 that the ordinance was not likely to be renewed, but if it was, the amendment would be renewed so as to not penalize [SAT Agiyar] for its inability to operate on a 24-hour basis pursuant to the Ordinance.

(*Id.* ¶ 49; *see also id.* ¶ 50 (alleging same under omissions theory).) When the Court first addressed these claims, it held that SAT Agiyar failed to plead its misrepresentation claims with particularity

---

[5] The Court notes here that although the 7-Eleven Charge Provision states that 7-Eleven should revisit the 7-Eleven Charge, the contract drafters chose to frame that requirement permissively rather than mandatorily. (Franchise Agreement § 10(a) ("We *may* reconcile the 7-Eleven Charge account reflected in the Financial Summaries on a monthly or other periodic basis." (emphasis added)); *accord Allegheny Valley Joint Sewage Auth. v. Am. Ins. Co.*, No. 94-2105, 1995 WL 1944748, at *2 (W.D. Pa. Aug. 17, 1995) ("[T]he meaning of the word 'may' is permissive, as opposed to mandatory."); *cf.* Franchise Agreement § 31(i)(i) ("[T]he words 'you agree' or 'we agree' or 'you will' or 'we will' mean an imperative duty and will be interpreted and construed to have the same meaning and effect as the words 'you shall' or 'you must' or 'we shall' or 'we must.'").)

8

under Rule 9(b). *See SAT Agiyar*, 2020 WL 3546821, at *5. SAT Agiyar has corrected that pleading deficiency by pleading "the who, what, where, when, and how of the alleged fraud." *Rickerson v. Pinnacle Foods Inc.*, No. 17-4469, 2017 WL 6034147, at *5 (D.N.J. Dec. 6, 2017) (citation omitted).

The problem, however, is that SAT Agiyar cannot cure other legal defects for these claims. To start, "[m]isrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 261 (N.J. 2005). Actionable misrepresentations and omissions must relate to a statement of past or present fact. *See McClellan v. Feit*, 870 A.2d 644, 650 (N.J. Super. Ct. App. Div. 2005). Critically, "[s]tatements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998) (citing *Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 479 F. Supp. 738, 749-50 (D.N.J. 1979)).

Here, SAT Agiyar's Amended Complaint fails because it does not allege a misrepresentation or omission relating to a past or present fact. SAT Agiyar alleges that Bauder represented that the Ordinance would "likely" not be renewed in the future and that "if" the Ordinance was renewed, 7-Eleven would renew the Amendment. (Am. Compl. ¶ 15.) These are textbook future and contingent statements. *See* Black's Law Dictionary (11th ed. 2019) (defining "contingency" as "[a]n event that may or may not occur in the future" and "a possibility"); *Portofino, LLC v. Cali*, No. 05-4042, 2006 WL 8457535, at *1 (D.N.J. Apr. 5, 2006) (dismissing fraud claim where complaint alleged statements "qualified with language such as 'likely'"); *cf. Fedway Assocs., Inc. v. Engle Martin & Assocs., Inc.*, No. A-297-18T4, 2019 WL 4894546, at *5 (N.J. Super. Ct. App. Div. Oct. 4, 2019) ("Statements as to actions [the defendants] intended to

take in the future . . . are not actionable because they were not statements of a presently existing or past fact.").

SAT Agiyar's claims are defective for another reason: the plain terms of the Franchise Agreement foreclose reliance on prior oral statements. Claims for fraudulent or negligent misrepresentation require some showing of reliance. *McClellan*, 870 A.2d at 650. Further, "a contractual provision flatly contradictory to prior oral assurances should cause most people—and particularly experienced, knowledgeable business people—to pause." *Alexander*, 991 F. Supp. at 436 (citations omitted). Here, the parties do not point to a flatly contradictory provision.[6] The Court's own review of the Franchise Agreement, however, shows that SAT Agiyar agreed to not rely on prior oral statements through the Franchise Agreement's integration clause. That clause provided that "[t]his is a fully integrated agreement and it supercedes [sic] all earlier or contemporaneous promises, representations, agreements and understandings." (Franchise Agreement § 31(g).) The clause further states that SAT Agiyar represented and warranted that it did not "rel[y] on and neither [7-Eleven] nor any of [7-Eleven's] agents or employees have made any representations relating to the Store." (*Id.*)[7] These provisions prevent reliance by SAT Agiyar on prior oral representations, including Bauder's. *See Kronenburg v. Katz*, 872 A.2d 568, 593 (Del.

---

[6] 7-Eleven attempts to do so by pointing to the Profit Distribution Provision and the Amendment. (Def.'s Moving Br. 10-11.) But neither is plainly contradictory. The Profit Distribution Provision is silent regarding 7-Eleven's promise to amend the contract if Princeton renewed the Ordinance. Moreover, as stated above, the 7-Eleven Charge Provision provides that 7-Eleven "may" revisit the 7-Eleven Charge—lending credence to the oral representation alleged by SAT Agiyar. (*See* Franchise Agreement § 10(a).) Similarly, the Amendment grants SAT Agiyar a two-year waiver from the 7-Eleven Charge adjustment without stating anything about 7-Eleven's promise to renew the Amendment if Princeton renewed the Ordinance. (*See* Amendment § C.)

[7] The Court recognizes that this representation is subject to exceptions contained in "Item 19 of [7-Eleven's] Franchise Disclosure Document" and "[7-Eleven's] 'Here Are The Facts' supplemental disclosure." (Franchise Agreement § 31(g).) As neither party has provided these documents, the Court assumes those documents are irrelevant.

Ch. Ct. 2004) (Strine, J.) ("[F]or a contract to bar a fraud in the inducement claim, the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract.").

### C.     Count IV: Violations Under New Jersey Franchise Practices Act

SAT Agiyar next alleges a violation under the New Jersey Franchise Practices Act, N.J. Stat. Ann. § 56:10-1 *et seq*. The Act is a "remedial statute intended to equalize the disparity of bargaining power in franchisor-franchisee relations." *Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 566 (3d Cir. 1998) (citing *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 626 (N.J. 1996)). To that end, in passing the Act, the New Jersey legislature intended to protect franchisees by, among other protections, "prohibiting the inclusion in the contract of provisions that would . . . unfairly prejudice the franchisee in the operation of its franchise." *Ocean City Express Co. v. Atlas Van Lines, Inc.*, 194 F. Supp. 3d 314, 321 (D.N.J. 2016) (quoting *S. Gas., Inc. v. Exxonmobil Oil Corp.*, No. 09-6236, 2016 WL 816748, at *7 (D.N.J. Feb. 29, 2016)). As relevant here, the Act prohibits the franchisor from terminating the franchisee without "good cause" and imposing "unreasonable standards of performance" on the franchisee. N.J. Stat. Ann. §§ 56:10-5, -7(e).

SAT Agiyar appears to proceed under two theories under the Act: *first*, that 7-Eleven constructively terminated the Franchise Agreement without good cause by altering the profit distribution scheme; and *second*, that 7-Eleven imposed unreasonable standards of performance on SAT Agiyar by penalizing it for complying with the Ordinance. (Pl.'s Opp'n Br. 13-15, ECF No. 27.) 7-Eleven responds that it cannot have constructively terminated its franchisee since SAT Agiyar is still in business, and further that 24-hour operation is not a standard under the Act. (Def.'s

Reply Br. 7-8, ECF No. 30; Def.'s Moving Br. 14.) The Court both agrees and disagrees with 7-Eleven.

To start, SAT Agiyar's constructive termination theory fails as a matter of law. As 7-Eleven notes, SAT Agiyar raised this theory for the first time in its Opposition Brief. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo. Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Even stronger though, SAT Agiyar's constructive termination claim must fail because SAT Agiyar is still in business. As numerous courts in this District have concluded, "a claim for constructive termination by a franchisee requires that a franchisee no longer be in operation." *Pai v. DRX Urgent Care, LLC*, Nos. 13-4333, 13-3558, 2014 WL 837158, at *7 (D.N.J. Mar. 4, 2014); *Naik v. 7-Eleven, Inc.*, No. 13-4578, 2014 WL 3844792, at *13 (D.N.J. Aug. 5, 2014) (same). As SAT Agiyar is still in business, its constructive termination theory fails as a matter of law.

The Court reaches a different conclusion, however, regarding SAT Agiyar's unreasonable standard of performance theory. As a threshold matter, the Court notes that unreasonable standard claims are "ill suited for resolution on a motion to dismiss" because a "factual context is required." *S. Gas., Inc.*, 2016 WL 816748, at *8 (citing *Naik*, 2014 WL 3844792, at *14). The Court thus analyzes SAT Agiyar's Amended Complaint for a non-conclusory, factual context of 7-Eleven's unreasonable standard of performance. *See Naik*, 2014 WL 3844792, at *14. Although the Act does not define what constitutes an unreasonable standard, case law clarifies that "arbitrariness, bad intent[,] or economic ruin . . . appear to be the hallmarks of an 'unreasonable standard' of performance' under the NJFPA." *King v. GNC Franchising, Inc.*, No. 04-5125, 2006 WL 3019551, at *5 (D.N.J. Oct. 23, 2006); *see also Naik*, 2014 WL 3844792, at *14 (noting as examples "requir[ing] a franchisee to operate at a substantial financial loss while the franchisor implements

a new and unproven market strategy" and "set[ting] franchisees up for failure so that the franchise agreements could be terminated"). The Court finds that SAT Agiyar has alleged enough at this stage to survive a motion to dismiss. SAT Agiyar's Amended Complaint alleges that the 24-Hour Provisions recognize that the Store cannot lawfully remain open for 24 hours (Am. Compl. ¶¶ 74-75), that the Profit Distribution Provision penalizes SAT Agiyar for complying with the Ordinance (*id.* ¶¶ 78-79), that the penalty has caused lost profits to SAT Agiyar (*id.* ¶ 88), and that the penalty has caused SAT Agiyar to breach the Franchise Agreement by failing to maintain required capital and equity (*id.* ¶¶ 27-28). The Amended Complaint also suggests that 7-Eleven has refused to renew the Amendment, even though 7-Eleven knew SAT Agiyar relied on that prospective renewal. (*See id.* ¶¶ 25, 54.) All told, these allegations, taken as true, provide 7-Eleven with a factual context of its purportedly unreasonable standard. *See King*, 2006 WL 3019551, at *5. Any remaining factual context is best left for discovery.

Further, 7-Eleven's proffered authority is unpersuasive. 7-Eleven cites *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, a forty-five-year-old case that notes that not every standard imposed by contract is unreasonable. (Def.'s Moving Br. 14 (citing 421 F. Supp. 237, 248 (D.N.J. 1976)).) There, the court was deciding a motion for a preliminary injunction—without taking as true all allegations in the complaint and without taking all inferences in favor of the non-moving party, as the Court must here.[8] Notably, subsequent litigation resulted in the denial of the defendant's summary judgment motion because, "[w]hile any given action of [the franchisor] may not have

---

[8] For similar reasons, the Court is not bound by its findings in its January 15, 2021 Memorandum Decision, which denied SAT Agiyar's motion for preliminary injunction. *See* Bryan A. Garner et al., The Law of Judicial Precedent 451 (2016) ("[A] district court's decision on a preliminary injunction or some other interlocutory order doesn't ordinarily become the law of the case. These are prototypical preliminary decisions made before a full and final consideration on the merits: they aren't meant to conclusively resolve an issue.").

violated [the unreasonable standard of performance section,] *the cumulative effect* amounted to imposing an unreasonable standard of performance insofar as [the franchisor] expected [the franchisee] to perform at all under the adverse conditions that [the franchisor] had created." *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 502 F. Supp. 637, 653 (D.N.J. 1980) (emphasis added). So too here: the cumulative effect of the Franchise Agreement's provisions may have imposed an unreasonable standard of performance on SAT Agiyar.

Moreover, *Sarwari v. BP Products North America Inc.* is factually distinguishable. That case involved franchisees suing over amended economic terms in their franchise agreements. No. 06-2976, 2007 WL 1118344, at *3 (D.N.J. Apr. 9, 2007). Critically though, those terms did not exist at the beginning of the litigation and were not the basis for the franchises' eventual termination. *Id.* at *5. Thus, the court concluded that the Act did not protect franchisees from every alteration to a franchise agreement, particularly where those amendments were part of the parties' past practices. *Id.*; *see also id.* (noting that the franchisor's amendments were "consistent with the course of dealings between the parties going back eight years"). In contrast, here, SAT Agiyar alleges that the Profit Distribution Provision has led to unreasonable standards of performance under the Franchise Agreement—including causing it to breach the Franchise Agreement. (*See* Am. Compl. ¶¶ 28, 79, 88.) Further, unlike the past practices at issue in *Sarwari*, SAT Agiyar alleges that 7-Eleven has engaged in bad-faith conduct because it knew that SAT Agiyar could not lawfully operate its store 24 hours a day and refused to renew the Amendment. (*See id.* ¶¶ 25, 54.) Especially considering the Act's remedial purpose, the Court finds these facts sufficient to survive 7-Eleven's Motion.

### D.     Count V: Breach of Implied Covenant of Good Faith and Fair Dealing

For similar reasons, the Court denies 7-Eleven's Motion regarding SAT Agiyar's breach-of-covenant claim. Here, SAT Agiyar alleges that 7-Eleven breached the implied covenant

14

by refusing to renew the Amendment and enforcing the more onerous profit distribution against SAT Agiyar. (Am. Compl. ¶¶ 92-93.) 7-Eleven retorts that SAT Agiyar's breach-of-covenant claim is duplicative of its breach-of-contract claim and that, in all events, this Court cannot rewrite the Franchise Agreement on more favorable terms to SAT Agiyar. (Def.'s Moving Br. 15-16.) The Court disagrees and holds that SAT Agiyar has alleged sufficient facts to defeat 7-Eleven's Motion.

Under New Jersey law, the implied covenant of good faith and fair dealing exists in every contract. *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (listing cases). The covenant requires parties to the contract to act reasonably and in good faith by "refrain[ing] from 'destroying or injuring the right of the other party to receive' its contractual benefits." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395-96 (N.J. 2005)). To be sure, the New Jersey Supreme Court has articulated the following test for breach-of-covenant cases:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). The takeaway is that SAT Agiyar must allege "bad motive in order to assert successfully a claim of breach of the implied covenant of good faith and fair dealing." *Id.* at 1129.

SAT Agiyar has so alleged here. According to SAT Agiyar, 7-Eleven has engaged in bad-faith conduct by abusing its discretion in refusing to renew the Amendment (Am. Compl.

15

¶ 92) and thereby "preventing [SAT Agiyar] from receiving its reasonably expected fruits under the contract," *Wilson*, 773 A.2d at 1130. That bad faith is buttressed by two additional allegations: (1) that Bauder told SAT Agiyar that 7-Eleven would renew the Amendment if Princeton renewed its Ordinance (Am. Compl. ¶ 64), and (2) that the 7-Eleven Charge Provision expressly envisioned that 7-Eleven may revisit the 7-Eleven Charge (*id.* ¶ 9). All these allegations, taken together as true, support SAT Agiyar's theory that 7-Eleven has abused its discretion by refusing to renew the Amendment and reaping the contractual benefits, thereby "destroy[ing] unilaterally [SAT Agiyar's] expectations without legitimate purpose." *Wilson*, 773 A.2d at 1130.

Further, the Court disagrees with 7-Eleven's contrary theory. 7-Eleven relies on the maxim that "if a defendant acts in accordance with an express contractual term, he cannot be liable for breach of the implied covenant." *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010). 7-Eleven, however, fails to point to an express term that negates its purported bad faith. 7-Eleven attempts to do so by relying on this Court's January 15, 2021 Memorandum Opinion. Specifically, 7-Eleven posits that the Profit Distribution Provision and Amendment expressly provide that 7-Eleven could increase the 7-Eleven Charge following the two-year Amendment period. (Def.'s Moving Br. 16.) Although true, the Court does not find that argument persuasive. SAT Agiyar alleges bad-faith conduct not just through 7-Eleven's enforcement of the Profit Distribution Provision but also through 7-Eleven's refusal to renew the Amendment. Indeed, SAT Agiyar also plausibly alleges that 7-Eleven knew about the Ordinance at the time the parties contracted. (Am. Compl. ¶ 37.) Thus, SAT Agiyar's breach-of-covenant claim does not rest on its breach-of-contract claim, and 7-Eleven cannot seek refuge in a contract that would have been "beyond the expectations of the parties" at the time of contract formation. *Wilson*, 773 A.2d at 130; *see also Alder Eng'rs, Inc. v. Dranoff Props., Inc.*, No. 14-921, 2014 WL 5475189, at *11

(D.N.J. Oct. 29, 2014) (denying motion to dismiss breach-of-covenant claim where those allegations did not "rest on a claimed breach of the [c]ontract by [d]efendant but on [d]efendant's alleged bad faith"); *Naik*, 2014 WL 3844792, at *12 ("Plaintiffs have asserted the requisite 'bad motive' in that they contend that [d]efendant's alleged breach of the duty of good faith and fair dealing is part of an attempt to create a hostile environment for [p]laintiffs and to intimidate them into surrendering their franchises, resulting in an alleged windfall for [d]efendant.").[9]

### E. Count VI: Tortious Interference

SAT Agiyar also alleges tortious interference against 7-Eleven. SAT Agiyar does not defend this claim in its Opposition Brief. Thus, the Court disposes of it summarily. For starters, "[a] cause of action for tortious interference with a contract cannot be directed against a defendant who is a party to the contract." *Emersion Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37-38 (N.J. 1989)). Further, where a plaintiff alleges the same underlying conduct for its tortious interference and contract claims (as SAT Agiyar does here), the economic loss doctrine bars the plaintiff's tortious interference claim. *See Dando v. Bimbo Food Bakeries Distrib., LLC*, No. 14-2956, 2017 WL 1362022, at *3 (D.N.J. Apr. 10, 2017). For both reasons, SAT Agiyar's tortious interference claim fails as a matter of law.

### F. Count VII: Conversion

For similar reasons, SAT Agiyar's conversion claim also fails as a matter of law. As suggested above, the success of tort claims brought alongside contract claims turns on "whether

---

[9] For similar reasons, the Court rejects 7-Eleven's argument that the Court is rewriting the Franchise Agreement. 7-Eleven points to no provision that the Court would be rewriting. Nor could it, as the Court's reasoning rests on SAT Agiyar's allegations that 7-Eleven abused its discretion under—rather than acted according to the express terms of—the Franchise Agreement.

the tortious conduct is extrinsic to the contract between the parties." *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *29 (D.N.J. June 27, 2019) (citation omitted). So, to maintain a separate conversion claim, SAT Agiyar must allege conduct that is "extraneous to the contract." *Id.* (quoting *Bracco Diagnostics., Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563 (D.N.J. 2002)). SAT Agiyar's Amended Complaint fails to do so—instead it relies exclusively on 7-Eleven redistributing profits under the Profit Distribution Provision. (*See* Am. Compl. ¶ 104 ("7-Eleven took Plaintiff's funds from the operation of the Store Location that were rightfully Plaintiff's pursuant to the Franchise Agreement").) Thus, the economic loss doctrine bars SAT Agiyar's conversion claim. *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 311 (D.N.J. 2009) (applying New Jersey law) ("[T]he Court finds that [p]laintiffs' claim[] for . . . conversion [is] barred by the economic loss doctrine."); *Heyman*, 2019 WL 2642655, at *30 (listing six cases barring torts and conversion claims under economic loss doctrine).

### IV.    CONCLUSION

For the reasons above, the Court grants in part and denies in part 7-Eleven's Motion. The Court will allow SAT Agiyar a final opportunity to amend its complaint. The Court cautions, however, that absent compelling allegations to the contrary, SAT Agiyar should refrain from bringing causes of action barred as a matter of law.[10]

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[10] Should SAT Agiyar amend, it should also plead the citizenship of its LLC members.