**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAT AGIYAR, LLC, <br><br> Plaintiff, <br><br> v. <br><br> 7-ELEVEN, INC., <br><br> Defendant. | Civil Action No. 19-19994 (MAS) (JTQ) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon cross-motions for summary judgment. First, Defendant 7-Eleven, Inc. ("7-Eleven" or "Defendant") moves for summary judgment on Plaintiff SAT Agiyar, LLC's ("SAT" or "Plaintiff"): (1) N.J. STAT. ANN. § 56:10-7(e) (the "Franchise Practices Act") claim ("Count IV"); and (2) implied covenant of good faith and fair dealing claim ("Count V"). (ECF No. 78.) 7-Eleven additionally moves for summary judgment on its counterclaim alleging that Plaintiff breached the franchise agreement ("Counterclaim Count I") and 7-Eleven's breach of guaranty third-party claim against Third-Party Defendant and SAT owner Naresh R. Patel ("Patel") ("Third-Party Complaint Count II"). (*Id.*) SAT opposed (ECF No. 85) and 7-Eleven replied (ECF No. 88).

Second, SAT filed a motion for partial summary judgment on Count IV. (ECF No. 79.) 7-Eleven opposed the motion. (ECF No. 87.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the

reasons stated below, 7-Eleven's motion for summary judgment is granted and SAT's motion for partial summary judgment is denied.

I.  **BACKGROUND**

The Court recites only the uncontested facts necessary to contextualize the present motions. All other relevant material facts in this matter are contested and will be recited where applicable in the Court's analysis below.

   A.  **Factual Background**

7-Eleven is a convenience store chain incorporated in Texas and authorized to do business in the State of New Jersey. (Am. Compl. ¶ 2, ECF. No. 21; Answer ¶ 2, ECF No. 56; Def.'s Moving Br., Ex. A ["Demcher Decl."] ¶ 4, ECF No. 78-5.) SAT is a New Jersey limited liability company. (Am. Compl. ¶ 1; Answer ¶ 1.) On September 14, 2015, SAT and 7-Eleven entered into a franchise agreement (the "Franchise Agreement") in which SAT agreed to operate the 7-Eleven franchise located on 259 Nassau Street, Princeton, New Jersey. (Am. Compl. ¶¶ 2, 6; Answer ¶¶ 2, 6; *see generally* Def.'s Moving Br., Ex. B ("Franchise Agreement"), ECF Nos. 78-6, 78-7.)[1] Contained in the Franchise Agreement and relevant to the instant dispute are: (1) a profit distribution scheme and a 24-hour provision in the Franchise Agreement; and (2) an open account between SAT and 7-Eleven and a minimum net worth provision contained in the Franchise Agreement.

   *1.  7-Eleven Charge and 24-Hour Provision*

First, the Franchise Agreement provided for a profit distribution scheme based on the gross profit of the location (the "7-Eleven Charge"). (Franchise Agreement ¶ 10, Ex. D, Schedule D.)

---

[1] At the time of franchising, Suresh and Naresh Patel owned SAT. (Def.'s Statement of Material Facts ("DSMF") ¶ 63, ECF No. 78-1; Franchise Agreement, Ex. A ("Statement of Ownership Interests") 1; Demcher Decl. ¶ 34; *see* Pl.'s Resp. to Statement of Material Facts ("PRSMF") ¶ 63, ECF No. 84.)

Under the Agreement, SAT paid the 7-Eleven Charge in exchange for: (1) a license to operate a 7-Eleven store; (2) use of the lease of the Princeton store location and equipment; and (3) the continuing services of the 7-Eleven brand. (*Id.* ¶ 10.) This charge represents what 7-Eleven received for its services. (*See generally* Franchise Agreement.)

Second, the Franchise Agreement further stipulated that the franchisee must keep the store open on a 24-hour basis, provided that such condition complies with local laws. (Franchise Agreement ¶ 19(d).) If the store could not operate on a 24-hour basis, the contract stipulated, the 7-Eleven Charge would be increased in proportion to how many hours the franchise location was closed. (Franchise Agreement, Ex. D ¶ (i)(2).) Thus, if the store was closed 24 hours of a 7-day week, then the 7-Eleven Charge would be increased in proportion to those 24 hours the store was not operating. (*See id.*)

Importantly, at the time of contracting, both parties were aware of a local ordinance in Princeton that prohibited stores from operating between 2 AM and 5 AM. (Am. Compl. ¶ 10; DSMF ¶ 75; Demcher Decl. ¶ 39; *see* PRSMF ¶ 75; *see generally* Def.'s Moving Br., Ex. I ("2021 Ordinance"), ECF No. 78-14; Def.'s Moving Br., Ex. H ("2014 Ordinance"), ECF No. 78-13.) Notably, however, in SAT's case, the Franchise Agreement was amended to waive the 24-hour requirement and the increased 7-Eleven Charge until the store was either permitted to operate on a 24-hour basis or had been operating for two years, whichever occurred first (the "Temporary Waiver Agreement"). (Def.'s Moving Br., Ex. C ("Temp. Waiver Agreement") 1, ECF No. 78-8.)

        2.      *Open Account and Minimum Net Worth Provisions*

Elsewhere in the Franchise Agreement were provisions related to bookkeeping and a minimum net worth SAT's store must maintain. First, the Franchise Agreement established an open account where all store-related payments to SAT by 7-Eleven were deposited and from which any

3

amounts owed to 7-Eleven would be withdrawn (the "Open Account"); in short, the Open Account was the forum through which money was exchanged between franchisor and franchisee. (Franchise Agreement ¶ 13(a).) 7-Eleven computed the value of the Open Account monthly and showed the document to SAT for each accounting period. (*Id.*)

Second, and relatedly, the Agreement provided that SAT must also maintain a minimum net worth of at least $15,000. (Franchise Agreement ¶ 13(d).) If the store value fell below the minimum net worth threshold and SAT did not fix the issue within three business days of being given notice, 7-Eleven could terminate the Franchise Agreement. (Franchise Agreement ¶ 26(4)(a).) Upon termination, SAT would then be required to repay any unpaid balance on the Open Account immediately upon 7-Eleven's demand. (Franchise Agreement ¶ 28(c).)

Finally, the Franchise Agreement was supplemented by a guaranty signed by Patel which provided that any obligations due under several specified paragraphs of the Franchise Agreement, including the paragraph providing that SAT must repay any unpaid balance on the Open Account upon termination, would be paid by Patel should SAT fail to perform under the Franchise Agreement (the "Principals' Guaranty Agreement"). (*See generally* Franchise Agreement, LLC Franchisee Amend. To Store Franchise Agreement, Ex. B ("Principals' Guar. Agreement").)[2]

3.   *Conduct During and After the Contracted Period*

From December 2015 to December 2017, the first two years of the store's operation, 7-Eleven did not impose the escalated 7-Eleven Charge on SAT pursuant to the Temporary Waiver Agreement. (DSMF ¶¶ 80, 83; Demcher Decl. ¶¶ 42, 44; Pl.'s Moving Br., Ex. H ("7-Eleven Charges 2016-2020") 1, ECF No. 79-10; Temp. Waiver Agreement 1.) In January 2018, however,

---

[2] The Agreement also contained a passage indicating that the written document is the fully integrated agreement and "supersedes all earlier or contemporaneous promises, representations, agreements and understandings." (Franchise Agreement ¶ 31(g).)

after the Temporary Waiver Agreement expired, an escalated 7-Eleven Charge was imposed on SAT. (DSMF ¶¶ 79, 84; Demcher Decl. ¶¶ 41, 45; 7-Eleven Charges 2016-2020 1; *see* PRSMF ¶¶ 79, 84.) Accordingly, in March 2018, SAT contacted a representative of 7-Eleven about a permanent extension of the Temporary Waiver Agreement. (DSMF ¶ 85; PRSMF ¶ 85; Demcher Decl. ¶ 46.)

In response to SAT's request, 7-Eleven offered to extend the Temporary Waiver Agreement an additional two years and to reimburse SAT for the increased charges in the interim period (the "Amended Waiver"). (DSMF ¶¶ 95, 96; Demcher Decl. ¶¶ 52, 56; *see* PRSMF ¶¶ 95, 96; *see also* Def.'s Moving Br., Ex. G ("First Amend. to Temp. Waiver Agreement") 1, ECF No. 78-12).) SAT asked that the Amended Waiver be made permanent, but 7-Eleven refused. (DSMF ¶ 98; Demcher Decl. ¶ 54; *see* PRSMF ¶ 98.) As a result of this refusal, SAT rejected the Amended Waiver. (DSMF ¶ 99; Def.'s Moving Br., Ex. D ("Patel Dep. Tr.") 104:10-20, ECF No. 78-9; *see* PRSMF ¶ 99.)

In 2020, the net worth of the franchise location began to decrease. (*See, e.g.*, Def.'s Moving Br., Ex. L ("Sept. 2020 Fin. Summ.") 1, ECF No. 78-17; Def.'s Moving Br., Ex. M ("Nov. 2020 Fin. Summ.") 1, ECF No. 78-18; Def.'s Moving Br., Ex. N ("Dec. 2020 Fin. Summ.") 1, ECF No. 78-19.) On November 9, 2020, 7-Eleven sent correspondence to Patel and SAT notifying them of their failure to comply with the minimum net worth provision of the Franchise Agreement. (Def.'s Moving Br., Ex. K ("Notice of Material Breach") 1, ECF No. 78-16.) At the time, the store's net worth was negative $59,099.87. (*Id.*) SAT and Patel were given until November 18, 2020 to restore the store's net worth. (*Id.*) SAT and Patel did not do so. (Patel Dep. Tr. 127:7-23, ECF No. 78-9.)

On January 25, 2021, 7-Eleven terminated the Franchise Agreement and took the store back from SAT. (*See* DSMF ¶ 134; PRSMF ¶ 134; Demcher Decl. ¶ 74.) 7-Eleven calculated and reported the net worth as negative $94,756.68. (Def.'s Moving Br., Ex. R ("Final Settlement

Statement") 1, ECF No. 78-23.) Neither SAT nor Patel paid this balance on the Open Account. (Patel Dep. Tr. 162:1-9.)

**B.     Procedural Background**

SAT initially filed suit against 7-Eleven in the Superior Court of New Jersey Law Division on October 3, 2019.[3] (Notice of Removal 1, ECF No. 1.) 7-Eleven then removed to this Court (ECF No. 1), after which it moved to dismiss on November 15, 2019 (ECF No. 4). 7-Eleven's motion was granted in part and denied in part (ECF No. 19), whereupon SAT filed an amended complaint (ECF No. 21).[4] On August 11, 2020, 7-Eleven moved to dismiss the amended complaint. (ECF No. 23.) 7-Eleven's second motion was also granted in part and denied in part, leaving only Count IV (violation of the Franchise Practices Act) and Count V (breach of implied covenant of good faith and fair dealing). (ECF No. 52.) During the briefing period for the second motion to dismiss, however, SAT moved for a temporary restraining order and preliminary injunction (ECF No. 33) which was ultimately denied without prejudice (ECF No. 42). 7-Eleven eventually filed an answer to the amended complaint on December 21, 2021 that impleaded Patel as a third-party defendant and raised one counterclaim and a third-party complaint against Patel: (1) breach of franchise agreement against SAT; and (2) breach of guaranty against Patel. (ECF No. 56.)

On January 28, 2022, the parties submitted a joint discovery plan and began discovery. (ECF No. 61.) On June 2, 2023, 7-Eleven moved for summary judgment. (ECF No. 78.) SAT

---

[3] SAT originally brought seven claims: (1) breach of contract; (2) declaratory judgment; (3) injunctive relief; (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) unjust enrichment; and (7) conversion. (*See generally* Notice of Removal, Ex. A ["State Compl."], ECF No. 1-1.)

[4] SAT's amended complaint raised: (1) breach of contract; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) violation of the Franchise Practices Act; (5) breach of implied covenant of good faith and fair dealing; (6) interference with prospective economic advantage; and (7) conversion claims. (*See generally* Am. Compl.)

opposed (ECF No. 85) and 7-Eleven replied (ECF No. 88). On the same day, SAT moved for partial summary judgment (ECF No. 79) and 7-Eleven opposed (ECF No. 87).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure[5] provide that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 248). In deciding a motion for summary judgment, a court must construe all facts and inferences in a light most favorable to the non-moving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met its threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to come forward with the requisite showing to establish "the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial[,]" then "there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

---

[5] Any reference to "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine dispute for trial. *Liberty Lobby*, 477 U.S. at 249. A summary judgment motion does not exist in a vacuum; the trial "judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

### III. DISCUSSION

7-Eleven and SAT cross-move for summary judgment on SAT's Franchise Practices Act claim (Count IV), and 7-Eleven alone moves for summary judgment against SAT's breach of implied covenant of good faith and fair dealing claim (Count V). Additionally, 7-Eleven moves for summary judgment on its breach of franchise agreement counterclaim against SAT (Counterclaim Count I) and its breach of guaranty third-party complaint against Patel (Third-Party Complaint Count II). For the reasons stated below, this Court grants summary judgment for 7-Eleven on all Counts.

### A. Count IV

7-Eleven and SAT each move for summary judgment on Count IV. The Franchise Practices Act regulates franchise agreements:

> (1) the performance of which contemplate[] or require[] the franchisee to establish or maintain a place of business within the State of New Jersey[;] (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act[;] and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise.

N.J. STAT. ANN. § 56:10-4(a) (West 1993). More specifically to the instant matter, the Franchise Practices Act establishes that "[i]t shall be a violation of [the Franchise Practices Act] for any

franchisor, directly or indirectly, . . . [t]o impose unreasonable standards of performance upon a franchisee." N.J. STAT. ANN. § 56:10-7, 7(e) (West 1999).

Plaintiff argues that 7-Eleven employed unreasonable standards by giving SAT the option of either: (1) "operat[ing] the store at a loss for the six years remaining on its franchise term[;] or [(2)] terminat[ing] the franchise" as a result of not providing an exemption from the 24-hour operation requirement." (Pl.'s Moving Br. 14, ECF No. 79-11.) In other words, Plaintiff contends that 7-Eleven intentionally, and unreasonably, placed Plaintiff in the position of operating the store at a loss. (*Id.*) Importantly, however, Defendant counters that such an issue is of no moment as SAT cannot bring a claim for violation of the Franchise Practices Act because it failed to substantially comply with the Franchise Agreement. (Def.'s Opp'n Br. 29-32, ECF No. 87.) This issue is dispositive.

A franchisor can defend against a Franchise Practices Act claim with a showing that the franchisee "failed to substantially comply with requirements imposed by the franchise." N.J. STAT. ANN. § 56:10-9 (West 1971). "Under th[is] defense, a franchisor may avoid liability for any claim under the Act if the franchisee has not substantially complied with the franchise agreement." *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 637 (3d Cir. 2024); *see also Simmons v. Gen. Motors Corp., Oldsmobile Div.*, 435 A.2d 1167, 1178 (N.J. Super. Ct. App. Div. 1981) (holding that this provision is a complete defense to any Franchise Practices Act claim). The Third Circuit has previously found that a material breach of contract constitutes substantial noncompliance for the purposes of the Franchise Practices Act. *See Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 317 n.8 (3d Cir. 2001). Because "New Jersey courts have recognized that a franchisee's material breach of a franchise agreement constitutes good cause for termination of a franchise," these claims are properly considered under traditional contract standards. *Mall*

*Chevrolet*, 99 F.4th at 631 (citing *New A.C. Chevrolet*, 263 F.3d at 317 n.8 (holding that there is "no real or practical difference between a conclusion that a party materially breached a contract, and a conclusion that the party failed to substantially comply with its obligations under a contract.")). As such, if there is no genuine dispute of material fact that SAT materially breached the agreement where it failed to maintain a net worth above $15,000, summary judgment under the Franchise Practices Act in 7-Eleven's favor is appropriate. *See id.*; (*see generally* Franchise Agreement).

Under New Jersey law, establishment of a breach of contract requires a party to show: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). As mentioned above, this breach must be material for the Court to find substantial noncompliance under the Franchise Practices Act. *See Mall Chevrolet*, 99 F.4th at 637. "A breach is material if it will deprive the injured party of the benefit that is justifiably expected under the contract." *New A.C. Chevrolet*, 263 F.3d at 303.

Here, the Franchise Agreement is indisputably a valid contract. (*See, e.g.*, DSMF ¶ 41; PRSMF ¶ 41; *see generally* Franchise Agreement.) It is also undisputed that 7-Eleven reclaimed the store from SAT on January 25, 2021 (DSMF ¶ 134; PRSMF ¶ 134), that 7-Eleven calculated and requested the $94,756.68 due to it on the Open Account from SAT (DSMF ¶ 137; Def.'s Opp'n Br., Ex. P ["May 2021 Fin. Summ."] 1, ECF No. 78-21; Final Settlement Statement 1; *see* PRSMF ¶ 137), and that SAT failed to pay this sum (Patel Dep. Tr. 162:1-9; DSMF ¶ 139; *see* PRSMF ¶ 139). When evaluated together, the terms and conduct constitute a breach of contract on SAT's part. *See Frederico*, 507 F.3d at 203. Crucially, because 7-Eleven has been deprived of funds to which it is contractually entitled, this breach is material. (*See* DSMF ¶ 41; PRSMF ¶ 41; 7-Eleven

Franchise Agreement ¶ 28(c)); *New A.C. Chevrolet*, 263 F.3d at 303 (finding a material breach where defendant offered a "dualed" vehicle line without plaintiff's prior written authorization, depriving plaintiff of the contractually entitled authorization provision). For the same reason, 7-Eleven has sufficiently shown damages. *See, e.g., Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC*, No. 21-11557, 2024 WL 1327311, at *15 (D.N.J. Mar. 28, 2024) (finding damages sufficiently shown where, at the time of breach, time remained on the franchise agreement under which plaintiff was contractually entitled to receive recurring fees).[6]

Because there is no dispute that there was a material breach of contract in this case, there is no dispute of material fact that SAT failed to substantially comply with the terms of the franchise agreement. *See New A.C. Chevrolet*, 263 F.3d at 317 n.8 (finding no genuine dispute of material fact that defendant did not substantially comply within the meaning of the Franchise Practices Act when it materially breached its contract). 7-Eleven, therefore, cannot be held liable under the Franchise Practices Act and this analysis need not go any further. *See Mall Chevrolet, Inc.*, 99 F.4th at 637.

For the reasons stated above, the Court grants summary judgment for 7-Eleven and denies summary judgement for SAT on Count IV.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing (Count V)

On Count V, SAT fails to provide any evidence of bad faith, and therefore, summary judgment is appropriate for 7-Eleven on SAT's breach of implied covenant of good faith and fair dealing claim. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997); *see also Wade v.*

---

[6] Summary judgment is granted to 7-Eleven on the Breach of Contract claim (Count I) for the same reasons.

*Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). Under this covenant, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* at 587 (quoting *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965)). The covenant "allow[s] redress for the bad faith performance of an agreement." *Doe v. Princeton Univ.*, 30 F.4th 335, 348 (3d Cir. 2022) (quoting *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002)). "To make out a claim for breach of the covenant, '[a] plaintiff must . . . prove the defendant's bad motive or intention.'" *Riachi v. Prometheus Grp.*, 822 F. App'x 138, 141-42 (3d Cir. 2020) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007)); *see generally Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 287 (3d Cir. 2000) (finding no breach of the implied duty of good faith when plaintiffs only alleged a failure to complete the agreed-upon clean-up process and obtain DEP approval within a reasonable time, and failed to allege any misconduct or omissions in bad faith).

In this case, Plaintiff argues that 7-Eleven's refusal to extend the term of the Temporary Waiver Agreement was done in bad faith. (*See* Am. Compl. ¶ 92.) Plaintiff additionally alleges that the application of the enhanced 7-Eleven Charge as a result of the inability to operate 24 hours per day was in bad faith. (*See id.* ¶ 93.) Defendant counters that the express written terms of the Temporary Waiver Agreement clearly established the waiver's validity for two years, Defendant's discretionary ability to renew it, and that Plaintiff cannot modify the terms of the agreement. (*See* Def.'s Moving Br. 24-25.)

Even construing the evidence in a light most favorable to the non-moving party, there is no dispute of material fact that 7-Eleven simply adhered to the terms of the Franchise Agreement as set forth by the contracting parties by refusing to renew the Temporary Waiver Agreement indefinitely and applying the increased 7-Eleven Charge. (*See* Franchise Agreement ¶ 10, Ex. D

12

(i)(2), Ex. D. Schedule D; *see generally* Temp. Waiver Agreement.) SAT has not provided any evidence of bad faith beyond 7-Eleven's actions in enforcing the express terms of the agreement, and enforcing express terms of a contract cannot serve as a basis for a breach of the implied covenant of good faith claim. *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 518 (D.N.J. 2009) ("[B]ecause 'a party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party,' a plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." (quoting *Elliot & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006))).

Plaintiff offers two arguments at this stage to assert bad faith, but neither succeeds. To the extent Plaintiff contends that 7-Eleven represented it would make the Temporary Waiver Agreement permanent (Pl.'s Opp'n Br. 4, ECF No. 85), this does not factor into the analysis because of the parol evidence rule. This rule states that when a contract is the final form of an agreement, no representations from before the contract was executed may be admitted as evidence. *See, e.g., Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div.) ("When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings . . . will not be admitted for the purpose of varying or contradicting the writing." (citation omitted)). Critically, the Franchise Agreement contains a merger clause which specifies that the Agreement is in its final form (Franchise Agreement ¶ 31(g)), and therefore no oral or

written representations from the contracting period can be taken into consideration. *See Filmlife*, 598 A.2d at 1235.[7]

To the extent that SAT argues that 7-Eleven's termination of the Franchise was in bad faith (Pl.'s Opp'n Br. 12), this also does not change the Court's analysis. The contract provides in relevant part that the franchisee must maintain "a [m]inimum [n]et [w]orth of at least fifteen thousand dollars" and that 7-Eleven may terminate the agreement if this is breached and SAT fails to cure within three business days. (Franchise Agreement ¶¶ 13(d), 26(a)(4)(a).) The 7-Eleven Franchise Location was $90,305.56 under the net worth requirement as of December 2020. (Dec. 2020 Fin. Summ. 1.) SAT did not cure within three days. (Patel Dep. Tr. 127:7-23.) Thus, in terminating the Franchise, 7-Eleven did nothing more than follow the terms of the agreement and, for the same reasons outlined above, this argument again fails to establish evidence of bad faith. *See Hassler*, 644 F. Supp. 2d at 518 ("[T]he duty of good faith and fair dealing cannot alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such agreement." (quoting *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008))). For these reasons, summary judgment is therefore granted in 7-Eleven's favor as to Count V.[8]

### C. Breach of Guaranty (Third-Party Complaint Count II)

7-Eleven is entitled to summary judgment on this count because SAT did not fulfill its obligation to pay under the Agreement, *see supra* at 10, and thereafter, it is undisputed that Patel

---

[7] In fact, 7-Eleven offered to extend the Temporary Waiver and reimburse SAT for the increased 7-Eleven Charges paid after the initial Temporary Waiver expired, suggesting the opposite of bad faith. (*See* DSMF ¶¶ 95, 96; PRSMF ¶¶ 95, 96; *see generally* First Amend. To Temp. Waiver Agreement.)

[8] Because summary judgment has been granted to 7-Eleven on both claims brought by SAT, the Court need not address the question of consequential or punitive damages.

did not cover the payment as contractually required. (*See* Principals' Guar. Agreement 1; Patel Dep. Tr. 162:6-9.) "A guaranty is a contract that is linked to another contract, by which a party to the second contract (the guarantor) agrees to take on the obligations of a party to the first contract if it does not meet its obligations." *Tryp Hotels*, 2024 WL 1327311, at *15 (citing *Westville Land Co. v. Handle*, 171 A. 520, 523 (N.J. 1934)). "[I]f the obligation established under the first contract is breached, and not satisfied through payment or performance, then the guarantor is on the hook, and becomes obligated." *Id.* at *15. In short, a breach of guaranty is established when the first contract is breached, and the guarantor fails to pay. *See id.* Breach of guaranty has previously been found when a franchisee breached the franchise agreement and failed to pay damages to the franchisor, after which the guarantor failed to pay those damages as agreed upon. *Id.*

Here, under the Principals' Guaranty Agreement, signed at the same time as the underlying Franchise Agreement, Patel agreed to "resolve disputes under this Guaranty in accordance with the terms and conditions of Paragraph[] 28," which specified that SAT would repay any negative balance on the Open Account upon termination. (Principals' Guar. Agreement 1.) Putting these two provisions together, the evidence establishes that Patel became obligated to pay the debit balance on the Open Account when SAT failed to do so. (*See* Principals' Guar. Agreement 1; Franchise Agreement ¶ 28(c).) Importantly, it is undisputed that Patel failed to pay this balance (Patel Dep. Tr. 162:6-9) and therefore breached the Principals' Guaranty Agreement. *See Tryp Hotels*, 2024 WL 1327311, at *15 (citing *Westville*, 171 A. at 523). 7-Eleven is entitled to summary judgment on this count.

## IV. CONCLUSION

For the reasons explored above, summary judgment is granted to 7-Eleven on all counts. An Order consistent with this Memorandum Opinion will follow.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**